**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) ) | |
| *Plaintiffs,* | ) | Case No. 19 CV 0384 |
| v. | ) ) | Judge |
| DEBRA J. GAYNOR, an individual; ARTURO A. ARMAND, ESQ., an individual; and ARMAND & DIEGUEZ, P.A., a Florida profit corporation, | ) ) ) ) | Magistrate Judge |
| *Defendants.* | ) ) ) | |

**COMPLAINT**

Plaintiffs, Central States, Southeast and Southwest Areas Health and Welfare Fund and Arthur H. Bunte, Jr., one of the Fund's present trustees, allege as follows:

**Jurisdiction and Venue**

1.     This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and is an equitable action to enforce the terms of an employee welfare benefit plan.

2.     This Court has jurisdiction over this action under Sections 502(e)(1) and 502(f) of ERISA, 29 U.S.C. §§ 1132(e)(1) and 1132(f), because the Plaintiffs seek equitable relief under Title I of ERISA. This Court also has jurisdiction under 28 U.S.C. § 1331, because this action arises under the laws of the United States.

3.     Venue is proper in this Court under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because an action under Title I of ERISA may be brought in the district where a plan

- 1 -

is administered—in this case, the Northern District of Illinois.

## Parties

4.　　Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund") is an employee welfare benefit plan as that term is defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1), and is administered from its principal and exclusive offices located in Rosemont, Cook County, Illinois.

5.　　The Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT"). All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to the Fund's participants and beneficiaries and paying the Fund's administrative expenses.

6.　　Plaintiff Arthur H. Bunte, Jr. is a trustee and a fiduciary of the Fund as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21). Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Mr. Bunte is authorized to bring this action on behalf of the Fund in his capacity as trustee and fiduciary.

7.　　Matthew S. Gaynor is an individual who resides in Loxahatchee, Florida. During the times relevant to this Complaint, Matthew S. Gaynor was covered by the Fund's Plan Document (the "Plan") as an employee who worked under an IBT Union collective bargaining agreement, which required Matthew S. Gaynor's employer to pay contributions on his behalf to the Fund for the purpose of providing him and his dependents with health and welfare coverage, including medical benefits.

8.    Defendant Debra J. Gaynor ("Ms. Gaynor") is an individual who resides in Loxahatchee, Florida. During all times relevant to this Complaint, Ms. Gaynor was covered by the Plan as the spouse and covered dependent of Matthew S. Gaynor.

9.    Defendant Arturo A. Armand, Esq. ("Mr. Armand") is an attorney who practices law in the State of Florida where he is employed by Armand & Dieguez, P.A.

10.    Defendant Armand & Dieguez, P.A. ("Armand & Dieguez") is a law firm operating out of Miami, Florida.

11.    For periods of time relevant to this Complaint, Mr. Armand represented Ms. Gaynor in a State of Florida workers' compensation case that Ms. Gaynor brought against her employer, Saks Fifth Avenue, seeking to recover from on-the-job injuries she suffered on or about October 17, 2015 (the "Workers' Compensation Case").

## **Relevant Plan Provisions**

12.    Any health and welfare coverage extended by the Fund is subject to the terms, conditions, and limitations upon the payment of benefits stated in the Plan. A copy of the Plan is attached hereto as Exhibit A.

13.    Section 4.03 of the Plan states, in relevant part:

> A Covered Individual shall not be entitled to payment on a claim for any charge incurred for any treatment or service for any illness or injury which is sustained as a result of any enterprise or occupation for wage or profit or is an illness or injury of the type covered by any applicable Workers' Compensation Act or similar law providing benefits to employees for on-the-job injuries.

*See* Exhibit A, p. 31.

14.    Section 11.14 of the Plan establishes and discusses the Fund's subrogation rights with respect to benefits paid on behalf of covered individuals.

15.    Section 11.14(a) of the Plan states, in relevant part, as follows:

The Fund, whenever it makes any payment for any benefits on behalf of a Covered Individual or other person related to any illness, injury or disability (collectively and separately "Disability") of the person, is immediately subrogated and vested with subrogation rights ("Subrogation Rights") to all present and future rights of recovery ("Loss Recovery Rights") arising out of the Disability which that person . . . may have. The Fund's Subrogation Rights extend to all Loss Recovery Rights of the Covered Individual. The Loss Recovery Rights of the Covered Individual include, without limitation, all rights based upon any one or more of the following:

    (1)     Any act or omission by any person or entity . . .

    (2)     Any policy . . . for any insurance, indemnity or reimbursement . . . including every . . . form of no-fault liability insurance, personal-injury-protection insurance, financial responsibility insurance, uninsured and/or underinsured motorist insurance and any casualty liability insurance or medical payments coverage. . . .

*See* Exhibit A, p. 60.

16.    Section 11.14(b) of the Plan states, in part:

The Covered Individual shall fully cooperate with the Fund in enforcement of the Fund's Subrogation Rights, shall make prompt, full, accurate and continuous disclosures to the Fund's representatives of all information about all circumstances of his/her Disability and about all other specifics of his/her Loss Recovery Rights . . . and shall refrain from any act or omission that would to any extent prejudice or impair the Fund's Subrogation Rights or seek to prejudice or impair the Fund's Subrogation Rights.

*See* Exhibit A, pp. 60-61.

17.    Section 11.14(c) of the Plan states:

The payment by the Fund for any benefits on behalf of a Covered Individual related to his/her Disability, and the simultaneous creation of the Fund's Subrogation Rights to the full extent of present and future payments, shall by itself (without any documentation from, or any act by, the Covered Individual) result in an immediate assignment to the Fund of all right, title and interest of the Covered Individual to and in any and all of his/her Loss Recovery Rights to the extent of such payments, and said payment by the Fund on behalf of a Covered Individual shall be deemed to constitute the Covered Individual's direction to his/her attorneys and other representatives to reimburse the full amount of the Fund's Subrogation Rights, from any settlement proceeds or other proceeds (collectively "Proceeds") which are paid to the attorneys or representatives for or on behalf of the Covered Individual, before the Covered Individual receives any Proceeds in full or partial satisfaction of his/her

Loss Recovery Rights, and before any fees or expenses are paid, including attorneys' fees.

*See* Exhibit A, p. 61.

18.     Section 11.14(d) of the Plan states:

No Covered Individual (including his/her attorneys and other representatives) is authorized to act on behalf of the Fund with respect to the Fund's Subrogation Rights, or to receive any payment or reimbursement on behalf of the Fund or to release or impair the Fund's Subrogation Rights to any extent. The Fund is entitled to receive payment and reimbursement in the full amount of the Fund's Subrogation Rights before the Covered Individual receives any Proceeds in full or partial satisfaction of his/her Loss Recovery Rights and before any fees or expenses are paid, including attorneys' fees. If the Fund is vested with Subrogation Rights pursuant to this Section 11.14, then, before the Covered Individual receives any Proceeds, the Covered Individual, and every person and entity that provides any recovery of Proceeds to or on behalf of a Covered Individual, are obligated to cause all such Proceeds to be paid primarily and directly to the Fund until the Fund has received full payment and reimbursement of the Fund's Subrogation Rights.

*See* Exhibit A, p. 61.

19.     Section 11.14(e) of the Plan states, in relevant part:

If at any time, either before or after the Fund becomes vested with Subrogation Rights pursuant to this Section 11.14, a Covered Individual . . . directly or indirectly receives any Proceeds as full or partial satisfaction of his/her Loss Recovery Rights . . . the Fund shall be vested with each of the following mutually independent rights:

(4)     The right, at any time after the Fund becomes vested with Subrogation Rights, to prosecute a civil action against the Covered Individual and/or against any person and/or any other entity (including any insurance company) which the Fund claims to be responsible, in whole or in part, to provide payment or reimbursement to the Fund of the unrecovered amount of the Fund's Subrogation Rights.

*See* Exhibit A, pp. 61-62.

20.     Section 11.14(f) of the Plan states, in relevant part, that the Fund "may assert a lien,

for recovery of the Fund's Subrogation Rights against any person or entity." *See* Exhibit A, p. 62.

21.     Section 11.14(g) of the Plan states:

The Fund shall not be financially responsible for any expenses, including attorneys' fees, incurred by or on behalf of a Covered Individual in the enforcement of his/her Loss Recovery Rights, except to the extent such responsibility is formally accepted by written agreement of an authorized Fund representative.

*See* Exhibit A, p. 62.

22.     Section 11.14(h) of the Plan states, in relevant part:

The Fund is authorized but not required to bring civil actions in enforcement of the Fund's Subrogation Rights, including direct actions (as subrogee or otherwise) against any person, entity, or Responsible Person which the Fund claims to be responsible, in whole or in part, to provide payment or compensation or reimbursement to the Fund of the unrecovered amount of the Fund's Subrogation Rights, and including actions against any person, entity, or Responsible Person to enjoin any act or practice which violates any terms of the Plan, the Fund's Subrogation Rights and/or to obtain other appropriate equitable relief to redress such violations and/or to enforce the Fund's Subrogation Rights. A Responsible Person is any person or entity, including attorneys or other representatives of a Covered Individual in any claim for damages for a Disability suffered by the Covered Individual, resulting from any act or omission of another person or entity, and who receives any Proceeds, by way of settlement or award from said claim for damages.

*See* Exhibit A, p. 62.

23.     Section 11.14(h) of the Plan also states, in relevant part:

If such a civil action is filed by the Fund and the Fund prevails in any amount on any of its claims, all persons, entities and Responsible Person(s) against whom such action is filed shall jointly and severally be responsible for all costs and expenses, including attorneys' fees, incurred by the Fund in connection with or related to such civil action.

*See* Exhibit A, p. 62.

24.     Section 11.14(j) of the Plan states, in relevant part:

The Fund's entitlement to full payment and reimbursement of its Subrogation Rights is absolute and unqualified, and is not to be reduced or impaired by the relationship of the gross or net amount of the Proceeds to the aggregate monetary damages sustained, or claimed to be sustained, by the Covered Individual in connection with the Disability related to his/her Loss Recovery Rights. The Fund's

Subrogation Rights are not in any way subordinate to or affected by any 'make whole' rule. . . . The Fund's Subrogation Rights are not in any way subordinate to or affected by any 'common fund' principle or factor – sometimes described as the equitable concept of a 'common fund' which governs the allocation of attorney's fees in any case in which a lawyer hired by one party creates through his/her efforts a fund in which others are entitled to share as well – the acceptance of plan benefits from the Fund entirely subordinates the Loss Recovery Rights of the Covered Individual to the Subrogation Rights of the Fund (without any 'common fund' reduction or other reduction of those Subrogation Rights). . . .

 *See* Exhibit A, p. 63 (emphasis in original).

25.     Section 11.11 of the Plan states, in relevant part:

The Fund shall be entitled to assert a lien against third parties, insurers and attorneys when necessary to protect the rights of the beneficiaries of the Plan or when necessary to protect the Fund's rights to recover any reimbursements provided for by the terms of this Plan.

*See* Exhibit A, p. 59.

## Background Information

26.     Ms. Gaynor claims that on or about October 17, 2015, she suffered on-the-job injuries while working for Saks Fifth Avenue.

27.     Because Saks Fifth Avenue disputed whether Ms. Gaynor was entitled to workers' compensation benefits for her on-the-job injuries, Ms. Gaynor requested that the Fund pay medical benefits related to her on-the-job injuries.

28.     The Fund paid $12,617.44 on Ms. Gaynor's behalf for medical expenses incurred relating to her on-the-job injuries. A copy of the Fund's paid claims history for Ms. Gaynor's medical expenses is attached hereto as Exhibit B.

29.     Upon information and belief, Ms. Gaynor and Mr. Armand settled the Worker's Compensation Case against Saks Fifth Avenue for $175,000.00 (the "Settlement").

30.     Upon information and belief, Ms. Gaynor and/or Mr. Armand is now in possession of the proceeds of the Settlement.

31.     Upon information and belief, as a result of the Settlement, Mr. Armand and/or Armand & Dieguez may have received or retained in a client trust account or in an escrow account a sum sufficient to satisfy all or part of the Fund's unreimbursed medical expenses.

32.     Upon information and belief, as a result of the Settlement, Mr. Armand and/or Armand & Dieguez may have, in violation of § 11.14(d) of the Plan, distributed to Mr. Armand or received from Saks Fifth Avenue directly an attorney's fee and caused the balance of the Settlement, less expenses, to be distributed to Ms. Gaynor.

33.     Mr. Armand is required by the Florida Bar Rules Regulating Trust Accounts to safeguard properties of third persons. Rule 5-1.1(a)(1) states, in relevant part:

> A lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation.

Florida Bar Rules Regulating Trust Accounts, Rule 5-1.1(a)(1).

34.     Rule 5-1.1(e) states:

> On receiving funds or other property in which a client or third person has an interest, a lawyer must promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or agreement with the client, a lawyer must promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, on request by the client or third person, must promptly render a full accounting regarding the property.

Florida Bar Rules Regulating Trust Accounts, Rule 5-1.1(e).

35.     Rule 5-1.1(f) states, in relevant part:

> When in the course of representation a lawyer is in possession of property in which 2 or more persons (1 of whom may be the lawyer) claim interests, the property must be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm must be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute must be kept separate by the lawyer until the dispute is resolved.

Florida Bar Rules Regulating Trust Accounts, Rule 5-1.1(f).

36.     Despite demanding reimbursement, the Fund has not received any payment from any of the Defendants.

### Count I: Imposition of an Equitable Lien and Constructive Trust on the Proceeds of the Settlement

37.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38.     Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiffs bring Count I to obtain appropriate equitable relief against the Defendants.

39.     Upon information and belief, one or more of the Defendants are in possession of a specifically identifiable fund of $12,617.44, in the amount of the Fund's subrogation lien asserted on the Settlement.

40.     Under Section 11.14 of the Plan, the Fund has established an equitable lien in the specifically identifiable amount of $12,617.44 against Mr. Armand and Armand & Dieguez (to the extent that settlement funds subject to the lien are maintained in a client trust account or in an escrow account or have been distributed to Mr. Armand as an attorney's fee) and/or Ms. Gaynor (to the extent that settlement funds subject to the lien have been disbursed to Ms. Gaynor or are being held for her benefit in a client trust account or escrow account).

41.     The $12,617.44 held by one or more of the Defendants, and upon which the Fund is entitled to an equitable lien, is to be held in constructive trust by the Defendants for the Fund to the extent of the Fund's lien.

42.     Based upon the equitable lien and the constructive trust, the Defendants stand in a fiduciary relationship to the Fund with respect to the value of such lien and trust, and the Defendants may not dispose of assets subject to that lien or violate fiduciary duties relating to those assets.

**WHEREFORE**, the Plaintiffs request the following relief:

(a)     Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), in the form of:

i.     Imposition of an equitable lien and a constructive trust upon the funds from the Settlement held by the Defendants, to the extent of the Fund's lien (plus interest), as identified in this Complaint;

ii.     Enforcement of the Fund's equitable lien in the amount of $12,617.44 (plus interest) against assets belonging to the Plaintiffs and held by the Defendants, as identified in this Complaint;

iii.     Enjoinment of the Defendants from disposing of any funds held in constructive trust for the Plaintiffs, until such time as the Fund's equitable lien together with all attorneys' fees and costs incurred by Plaintiffs in connection with this action have been satisfied in full;

(b)     That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint, until such time as the Fund's equitable lien has been satisfied in full;

(c)     An award of attorneys' fees and costs; and

(d)     Such further or different relief as this Court may deem proper and just.

**Count II: Enforcement of the Plan (Subrogation Lien & Constructive Trust)**

43.     Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

44.     Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiffs bring Count II to enforce the terms of the Plan.

45.     The Plan grants the Fund reimbursement and subrogation rights, and requires the repayment by any responsible party (including the Defendants) of covered medical benefits paid

by the Fund on behalf of a covered individual.

46.     Thus, under the terms of the Plan, the Fund is entitled to reimbursement from the Defendants in the amount $12,617.44, representing the unreimbursed funds paid by the Fund on behalf of Ms. Gaynor for medical expenses incurred as a result of her on-the-job injuries, before any proceeds of the Settlement, including attorneys' fees, are paid to the Defendants.

47.     To date, the Defendants have failed to pay any reimbursement to the Fund from the proceeds of the Settlement, and the full amount (*i.e.,* $12,617.44) of the Fund's subrogation lien is unreimbursed.

**WHEREFORE**, the Plaintiffs request the following relief:

(a)     Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), in the form of:

i.      An order enforcing the Plan and enjoining the Defendants from violating the Plaintiffs' subrogation rights as established by the Plan, including an order requiring reimbursement in the amount of the Fund's subrogation lien of $12,617.44 (plus interest);

ii.     Enjoinment of the Defendants from disposing of any Settlement funds in the identifiable amount of $12,617.44 (plus interest) against assets held by the Defendants as described in this Complaint, until such time as the Plaintiffs' subrogation rights as established by the Plan have been satisfied in full;

iii.    Imposition of an equitable lien and a constructive trust upon the funds from the Settlement held by the Defendants, to the extent of the Fund's lien (plus interest), as identified in this Complaint;

(b)      That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint, until such time as the Plaintiffs' subrogation rights as established by the Plan have been satisfied in full;

(c)      An award of attorneys' fees and costs; and

(d)      Such further or different relief as this Court may deem proper and just.

### Count III – Breach of Fiduciary Duty

48.      Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

49.      Upon information and belief, one or more of the Defendants are in possession of assets, which in equity and good conscience are property of the Fund, an employee welfare benefit plan, because the Defendants refuse to reimburse the Fund the amount of the Fund's lien on the proceeds of the Settlement meant to be paid to the Fund. The Defendants thereby owe an obligation under Section 404 of ERISA, 29 U.S.C. § 1104, to discharge their fiduciary duties to the Fund regarding those assets, hold said assets in constructive trust for the Fund, and reimburse the full amount owed to the Fund, upon demand by the Fund.

50.      Notwithstanding that the Fund has demanded full repayment of assets, consisting of the medical benefits that the Fund has paid on behalf of Ms. Gaynor in the amount of $12,617.44, the Defendants have refused to reimburse the Fund any of those assets constructively held by them. Therefore, the Defendants have breached their fiduciary duties and are liable to the Fund for that breach under Section 409 of ERISA, 29 U.S.C. § 1109. The Defendants are thus required to hold the assets for the exclusive purpose of providing benefits to participants and beneficiaries of an employee welfare benefit plan and are liable to the Fund.

51.      The Defendants' refusal to reimburse the Fund for the medical benefits it has paid

on behalf of Ms. Gaynor constitutes a breach of Defendants' fiduciary duties. The Defendants hold property of an employee welfare benefit plan as constructive trustees and those assets must only be used for the purpose of providing benefits to participants and beneficiaries of the Fund according to the terms of the Plan.

**WHEREFORE**, the Plaintiffs request the following relief:

(a)    Equitable relief under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), to remedy the Defendants' fiduciary breach and violation of Section 409 of ERISA, 29 U.S.C. § 1109, in the form of an injunction requiring the Defendants to reimburse the Plaintiffs $12,617.44, plus interest;

(b)    Attorneys' fees and costs in favor of the Plaintiffs and against the Defendants;

(c)    That this Court retain jurisdiction to enforce the equitable remedy sought by the Plaintiffs, for such period of time as is required, until the Defendants reimburse the Plaintiffs the amount of $12,617.44, plus interest; and

(d)    That this Court enter any further orders which are reasonable and just to effectuate the equitable remedy requested herein.

Respectfully submitted,

*/s/ Brandon A. Buyers*
Brandon A. Buyers (ARDC #06312454)
CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois 60018
847-939-2464
bbuyers@centralstatesfunds.org

January 18, 2019                              *ATTORNEY FOR PLAINTIFFS*